Docket No. 24-9002
_____

In The United States Court of Appeals
For The Third Circuit
_____

**UNITED STATES,**

Appellee,

v.

**ROBERT BOWERS,**

Defendant – Appellant.
_____

## Motion for Briefing Schedule

Defendant-Appellant, Robert Bowers, by his undersigned counsel, submits this request that the Court set a briefing schedule for his appeal, as directed by this Court in its order dated August 5, 2024.

Given counsel's knowledge of other federal capital appeals, the voluminous size and complexity of the record in this case, and counsel's responsibilities to investigate and raise all potentially meritorious issues in a federal death penalty appeal, counsel reasonably anticipate that it will take approximately three years from the date the notice of appeal was filed to complete Mr. Bowers's opening brief. Mr. Bowers therefore respectfully requests that the Court order his opening brief be filed three years from the filing of the notice of appeal, May 31, 2027.

Counsel propose to provide the Court with status reports every four to six months, according to the Court's preference, and to keep the Court well apprised, as early as it is known, whether it appears the deadline should be adjusted.[1]

Appellee, the United States of America, through counsel, opposes this proposal and plans to submit its own. Mr. Bowers respectfully requests the opportunity to reply to the government's proposal.

## Procedural History

On August 3, 2023, after four and one-half years of pretrial litigation and three months of trial proceedings, a jury convicted Mr. Bowers of 63 counts relating to the shooting deaths of eleven worshippers at The Tree of Life Synagogue in Pittsburgh, Pennsylvania, and injuries to others, including law enforcement officers. The jury sentenced Mr. Bowers to death on all twenty-two capital-eligible counts. The district court denied Mr. Bowers's motion for a new trial on May 17, 2024.

Shortly thereafter, Mr. Bowers timely noticed this appeal, which will be only the second capital appeal to be heard in the Third Circuit in the history of the modern federal death penalty. Effective on that date, appellate counsel, Sean Bolser and Sarah Gannett, were appointed by the district court to represent Mr. Bowers,

---

[1] Counsel suggest that the Court set the schedule for the appellee's response and Mr. Bowers's reply closer in time to the filing of the opening brief, when the number of issues to be argued and the size of the opening brief are clearer.

and this Court confirmed their appointment a few days later. A third appellate lawyer, Margaret Farrand, was added by this Court the following month. None of his three appellate lawyers represented Mr. Bowers in the district court.[2] The government is represented by seven attorneys in this Court, three of whom participated directly in the briefing and trial in the district court.

Approximately two months after the appointment of appellate counsel, Mr. Bowers moved this Court to suspend imposition of any briefing schedule for 120 days to permit counsel to work on completing the record on appeal, to undertake a review of the record, and to propose a realistic briefing schedule. This Court granted the unopposed motion and directed counsel to file a status report every 30 days. Status reports were filed each of the last three months.

**Three years is a reasonable estimate of the time required to complete the opening brief in this federal capital appeal.**

Undersigned counsel are experienced appellate attorneys who have been counsel of record in multiple federal capital appeals. Counsel have also reviewed the dockets in additional cases to ascertain how much time has been requested and afforded for filing of the appellant's opening brief in recent federal capital appeals in this Court and courts around the country. Nationwide, looking at the 25 most

---

[2] Such substitution of trial counsel is consistent with best practice. *See* Guide to Judiciary Policy, Vol. 7, Pt. A § 620.40(b) (recommending appointment of appellate counsel who did not represent the appellant at trial).

recent federal capital appeals, the average time between the appellant's filing of his notice of appeal and filing of his opening brief has been nearly three years (approximately 983 days).[3] Looking at the data below, in jurisdictions such as the Fifth and Eight Circuits, which have addressed a significant number of federal capital appeals and where many issues have therefore been resolved, the periods of time afforded are often considerably shorter. Looking, by contrast, only in jurisdictions such as the First, Second, and Ninth, which like this Court, have seen fewer federal capital appeals, the average is higher: approximately 1530 days.[4]

In the two cases the government cited during the trial proceedings as most analogous to Mr. Bowers's, *United States v. Tsarnaev* (No. 16-6001, First Circuit),

---

[3] *See United States v. Council*, 17-cr-866 (4th Cir.) (opening brief filed 791 days after notice of appeal); *United States v. Cramer*, No. 18-40598 (5th Cir.) (665 days); *United States v. Fackrell*, No. 18-40598 (5th Cir.) (665 days); *United States v. Roof*, No. 17-3 (4th Cir.) (980 days); *United States v. Sampson*, 17-6001 (1st Cir.) (1233 days); *United States v. Tsarnaev*, No. 16-6001 (1st Cir.) (1063 days); *United States v. Sanders*, No. 15-31114 (5th Cir.) (1086 days); *United States v. Hall*, No. 14- 2472 (8th Cir.) (640 days); *United States v. Coonce*, No. 14-2800 (8th Cir.) (733 days); *United States v. Torrez*, No. 1401 (4th Cir.) (697 days); *United States v. Savage*, No. 14-9003 (3d Cir.) (1491 days); *United States v. Aquart*, No. 12-5086 (2d Cir.) (766 days); *United States v. Garcia*, No. 10-40525 (5th Cir.) (312 days); *United States v. Snarr*, No. 10-40525 (5th Cir.) (312 days); *United States v. Umana*, No. 10-6 (4th Cir.) (1122); *United States v. Runyon*, No. 09-11 (4th Cir.) (818 days); *United States v. Ebron*, No. 09- 40544 (5th Cir.) (537 days); *United States v. Sanchez*, No. 09-12716 (11th Cir.) (1045 days); *United States v. Troya*, No. 09-12716 (11th Cir.) (1049 days); *United States v. Taylor*, No. 09-5517 (6th Cir.) (1650 days); *United States v. Kadamovas*, No. 07-99009 (9th Cir.) (2294 days); *United States v. Mikhel*, No. 07-099008 (9th Cir.) (2298 days); *United States v. Hager*, No. 8-4 (4th Cir.) (1550 days); *United States v. Jackson*, No. 06-41680 (5th Cir.) (434 days); *United States v. Montgomery*, No. 08-1780 (8th Cir.) (335 days).

[4] *See United States v. Sampson*, No. 17-6001 (1st Cir.) (1233 days); *United States v. Tsarnaev*, No. 16-6001 (1st Cir.) (1063 days); *United States v. Aquart*, No. 12-5086 (2d Cir.) (766 days); *United States v. Kadamovas*, No. 07-99009 (9th Cir.) (2294 days); *United States v. Mikhel*, No. 07-099008 (9th Cir.) (2298 days).

and *United States v. Roof* (No. 17-3, Fourth Circuit), the appellate courts allotted nearly three years (1063 days) and over two and one-half years (980 days), respectively. Mr. Roof's appellate counsel were afforded this lengthy period even though Mr. Roof proceeded *pro se* for significant portions of his trial and waived presentation of a defense penalty phase entirely, limiting both the length of the record and the number of issues raised.

Mr. Bowers's appeal could take even longer. Few cases nationally have been as intensely litigated as this one, owing at least in part to the seriousness of the offense and its high-profile nature. The pretrial proceedings here were lengthy and extensive, spanning almost four and one-half years. Jury selection took nearly a month, and the trial lasted two months. During the pendency of the case, eleven attorneys entered appearances for the government, and six entered appearances for the defense. Between them, these lawyers filed more than 150 substantive motions (on a docket comprising 1640 entries), often with extensive and lengthy exhibits and frequently involving multiple rounds of briefing. The motions raised complex questions about virtually all aspects of the case, including the indictment, the Federal Death Penalty Act, jury selection, evidentiary issues, mental health examinations and testimony, and capital sentencing procedures.

It is apparent from counsel's initial review of the docket that the parties raised issues not previously litigated in this Circuit, nor in any prior federal death

penalty case, which is unsurprising in this high-profile case, but which will make preparing the appeal considerably more challenging. In other federal capital cases in which similarly intensive and novel pretrial and trial litigation occurred, preparation of the appeal took 50% more time than the national average.[5]

The only other federal death penalty appeal reviewed by this Court in the modern death penalty era, *United States v. Savage*, No. 14-9003, actually took more than three years from the filing of the notice of appeal to filing of the appellant's opening brief. Although, on initial review, many of the issues appear to have been different, *Savage*—a twelve-victim, racketeering (VICAR) murder case—was also a complex and lengthy district court proceeding.[6] The 369-page appeal ultimately raised fifteen claims.[7] This Court approved just over four years (1491 days) from the filing of the notice of appeal for appellate counsel to compile the record and prepare those claims. This is in line with the time allowed by other

---

[5] Cases involving similarly novel and intensive pretrial and trial litigation include, *e.g.*, *United States v. Tsarnaev*, No. 16-6001 (1st Cir.) (opening brief filed 1063 days after notice of appeal); *United States v. Sampson*, No. 04-6001 (1st Cir.) (1233 days); *United States v. Hager*, No. 08-04 (4th Cir.) (1550 days); *United States v. Kadamovas*, No. 07-99009 (9th Cir.) (2294 days); *United States v. Taylor,* No. 09-5517 (6th Cir.) (1650 days); *United States v. Mikhel*, No. 07-099008 (9th Cir.) (2298 days); *United States v. Troya*, No. 09-12716P (11th Cir.) (1049 days); *United States v. Sanchez*, No. 09-12716P (11th Cir.) (1045 days). The average among these cases was 1,523 days to prepare and file the opening brief.

[6] In *Savage*, there were more than 1600 docket entries, 100 court days, and over 1000 exhibits. There were, however, only twelve death-eligible counts, as opposed to the twenty-two here. And although the docket was lengthy, fewer than 100 substantive motions were filed.

[7] The government's brief in response was 432 pages, and the Court's opinion was 201 pages.

courts without a high volume of Federal Death Penalty Act cases—including the First, Second, and Ninth Circuits.[8]

Mr. Bowers's case is only the second federal capital prosecution this Court will directly review—and just one of a few similar cases nationally. The issues to be raised about the conduct of both the trial and the capital sentencing hearing under the Federal Death Penalty Act (FDPA), 18 U.S.C. § 3591 *et seq.*, are therefore likely to involve matters of first impression in this Circuit and perhaps nationally. Those issues are particularly time-consuming to brief, as they demand that counsel address not just applicable Circuit precedent, but also a range of decisional law in other jurisdictions, as well as legislative history, policy considerations, and secondary sources. This explains the lengthy briefing schedules in *Savage* and in the First, Second, and Ninth Circuits, discussed above, with an average, over the last 25 appeals nationally, of approximately 1530 days.

Based on the time required in previous federal capital cases and experienced counsel's initial review of this case, counsel reasonably estimate that preparation of Mr. Bowers's opening brief is likely to take approximately three years from the filing of the notice of appeal on May 31, 2024.

---

[8] *See, e.g.*, *United States v. Tsarnaev*, No. 16-6001 (1st Cir.) (1063 days); *United States v. Sampson*, No. 04-6001 (1st Cir.) (1233 days); *United States v. Kadamovas*, No. 07-99009 (9th Cir.) (2294 days); *United States v. Mikhel*, No. 07-099008 (9th Cir.) (2298 days).

### The standards of practice for a federal capital appeal support a substantial preparation period for this case.

As a first step in a federal capital appeal, appellant's counsel must obtain a complete and accurate record of the proceedings. This requires Mr. Bowers's three counsel—none of whom represented Mr. Bowers at trial—to compare trial counsel's files to the district court's and assure that the official file reflects everything that occurred. This allows preparation of a comprehensive appendix, so the Court may fulfill its responsibility to "review the entire record in the case." 18 U.S.C. § 3593(b). *See* ABA Guidelines, Guideline 10.8, Commentary; *Dobbs v. Zant*, 506 U.S. 357, 358 (1993) (per curiam) (highlighting the "importance of reviewing capital sentences on a complete record"). Compiling the record requires meticulous care by counsel, so that no aspect of the proceedings is missed. *See* ABA Guidelines, Guideline 10.7(B)(2) ("Counsel at every stage have an obligation to satisfy themselves independently that the official record of the proceedings is complete and to supplement it as appropriate."); Guideline 10.8, Commentary.

Since appointment, counsel have begun to collect and review the voluminous district-court record, a laborious and time-intensive process, given the size of the record, the unusual number of written motions, the highly fact-specific and often deeply technical nature of much of the litigation, and counsel's ethical mandate to identify and preserve all colorable appellate issues in a capital case. This has involved obtaining from the clerk file-stamped copies of hundreds of

sealed materials not in trial counsel's files nor available on PACER; obtaining and organizing trial counsel's voluminous electronic files across multiple platforms; cataloguing nearly sixty boxes of trial counsel's paper records;[9] reviewing exhibits maintained by the district court; and identifying for the court reporter transcripts not already on file in the district court. Counsel's review of the lengthy record immediately available is underway.

Despite considerable progress, counsel anticipate that record review and compilation will be ongoing. The docket contains 1640 filings, including more than 150 separate substantive motions; almost 14,000 pages of transcripts; and over 1000 exhibits, some of which were electronic (whether audiovisual or otherwise technical) and so were not maintained by the clerk. The proceedings comprised approximately 100 days of in-court appearances, including pretrial motions hearings, almost a month of jury selection, and the nearly two-month trial. Counsel continue to identify unrecorded proceedings and other materials germane to the case but not contained in the record, which counsel must locate or reconstruct so that the record will be complete, a full review can be conducted, and

---

[9] Review of the electronic and paper files is necessary to identify material that may need to be made part of the appellate record, such as correspondence between the parties and the district court that was not docketed during the press of trial and records of unrecorded proceedings that may need to be reconstructed.

an appropriate appendix ultimately can be prepared for the Court.[10] Counsel are in regular communication about these efforts with the district court clerk's office and trial counsel for both sides.[11]

Once the record has been compiled and reviewed, counsel must develop and present all "arguably meritorious" issues—not merely the issues counsel believe have the best chance of success. ABA Guidelines, Guideline 10.5.1(C). This process involves identifying possible issues, determining which have potential merit, and thoroughly researching those issues, even before embarking on brief writing. This is because "'[w]innowing' issues in a capital appeal can have fatal consequences [and] [i]ssues abandoned by counsel in one case … cannot necessarily be reclaimed later." *Id.*, Commentary. Thus, "[w]hen a client will be killed if the case is lost, counsel should not let any possible ground for relief go unexplored or unexploited." *Id.*

Here, counsel must evaluate each of the more than 150 motions noted in the docket, plus all of the motions and objections contained in the 14,000 pages of

---

[10] This may require counsel to file a motion or stipulation in the district court to correct or supplement the record under Rule 10(e) of the Federal Rules of Appellate Procedure.

[11] Recently, counsel traveled to Pittsburgh, Pennsylvania, and worked for two days with district court staff and counsel for the government to endeavor to assemble a complete set of trial exhibits. During this review, counsel learned that the copy in trial counsel's files both was incomplete and was not the final version admitted at trial and maintained by the district court. Counsel now have a complete set of the documentary exhibits, and the government has agreed to collaborate with counsel to reconstruct the audiovisual exhibits, which—according to local rules—were not maintained by the district court.

transcripts. Counsel must also carefully inspect the record for errors counsel failed to note but which may be cognizable by the Court. Once the arguably meritorious issues for appeal are identified, counsel must brief them. Like *Savage*, federal capital appeals frequently contain more than a dozen issues and comprise hundreds of pages, and their preparation is itself a time-consuming and laborious effort. *See, e.g., United States v. Tsarnaev*, No. 16-6001 (1st Cir.) (466 pages); *United States v. Roof*, No. 17-3 (4th Cir.) (278 pages).[12]

For all these reasons, as the Court is aware, the time required to prepare a federal capital appeal is longer than for the usual appeal and the briefing substantially longer. Counsel expect that the time required in Mr. Bowers's case will be at least as long.

### Regular status reports will assure the appeal is timely filed.

Counsel propose to submit status reports every four to six months, according to the Court's preference, until the opening brief is submitted, permitting the Court to track the progress of the appeal. Counsel will promptly advise the Court of any

---

[12] *See also, e.g., United States v. Sampson*, No. 04-6001 (1st Cir.) (296 pages); *United States v. Wilson*, No. 07-1230 (2d Cir.) (456 pages); *United States v. Coonce*, No. 14-2800 (8th Cir.) (263 pages); *United States v. Hall*, No. 14-2742 (8th Cir.) (237 pages); *United States v. Sanchez*, No. 09-12716P (11th Cir.) (253 pages); *United States v. Kadamovas & Mikhel* (Joint Brief), No. 07-99009 (9th Cir.) (153 pages); *United States v. Kadamovas*, No. 07-99008 (9th Cir.) (194 pages); *United States v. Mikhel*, No. 07-99009 (9th Cir.) (200 pages); *United States v. Troya*, No. 09-12716P (11th Cir.) (236 pages).

obstacles encountered and/or of the possibility that briefing may be completed before the requested schedule.

Counsel submit that establishing a realistic estimated deadline for filing the opening brief will assist the Court and both sides by avoiding the disruptive and piecemeal scheduling proceedings that have plagued other federal capital appeals.

**Conclusion**

Undersigned counsel will continue to make it the highest priority to timely compile and review the record and to identify, research, and promptly present issues for the appeal. However, given their special ethical responsibilities in this federal death-penalty appeal, the extraordinary size, complexity and novelty of the record and the appellate issues, and the challenges counsel always confront in perfecting the record, the requested time is reasonable and necessary both to provide effective representation on appeal and to accommodate the Court's interest in receiving the most professional, thorough, and helpful possible briefing in this important case.

WHEREFORE, Mr. Bowers respectfully requests that the Court set the deadline for filing his opening brief as May 31, 2027, and require interim status reports during the intervening period.

Respectfully submitted,

ROBERT BOWERS

by his attorneys:

*s/ Sean J. Bolser, Esq.*
Federal Capital Appellate Resource Counsel Project
Federal Defenders of New York
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201
718-330-1200
sean_bolser@fd.org

*s/ Sarah S. Gannett, Esq.*
Office of the Federal Public Defender
District of Arizona
250 N. 7th Avenue
Suite 600
Phoenix, AZ 85007
602-382-2700
sarah_gannet@fd.org

*s/ Margaret Farrand, Esq.*
Office of Federal Public Defender
Central District of California
321 E 2nd Street
Los Angeles, CA 90012
213-894-7528
margaret_farrand@fd.org