Docket No. 24-9002

_____

In The United States Court of Appeals
For The Third Circuit

_____

**UNITED STATES,**

Appellee,

v.

**ROBERT BOWERS,**

Defendant – Appellant.

_____

**<u>Motion for Six-Month Extension of Briefing Schedule</u>**

Defendant-Appellant, Robert Bowers, by his undersigned counsel and pursuant to Local Appellate Rule 31.4, requests that the Court extend the briefing schedule for his appeal by six months. This is Appellant's first motion for extension.

By the Court's order dated December 18, 2024 (Doc. 35), the Brief for Appellant is due on September 19, 2025. With a six-month extension, the Brief for Appellant would be due on March 19, 2025,[1] a date just a few months beyond the government's original proposed deadline of December 18, 2025. Even as it

---

[1] Pursuant to the Court's order, the Brief of Appellee would be due 90 days later, and Appellant's Reply Brief would be due within 45 days of service of Appellee's Brief. (Doc. 35.)

proposed that December 18, 2025 deadline, the government acknowledged that "[defense] counsel may still request an extension of that deadline based on a showing of good cause should they deem such a request necessary." (Doc. 34 at 7).

The requested extension is warranted for good cause because although counsel have worked diligently, made substantial progress in record collection and issue identification, and begun researching and drafting points, substantial work remains that will be impossible to complete before the current deadline. A six-month extension of the briefing schedule would keep the timeline in this case well within the timelines in other capital cases, especially considering the extensive district court record and the varied, complex, and often novel legal issues counsel have identified to date.[2]

Undersigned counsel sought the position of Appellee, the United States of America, on this motion and were advised that the government opposes any extension of the current briefing schedule.

---

[2] Indeed, the average time between the filing of the Notice of Appeal and the filing of the opening brief in recent federal capital appeals has been almost three years (983 days or about 33 months). *See infra* at 8 & n.8. Comparably significant, lengthy, and complex cases have taken longer. *See infra* at 12-13 & n.13.

## Procedural History

On August 3, 2023, after four and one-half years of pretrial litigation and three months of trial proceedings, a jury convicted Mr. Bowers of 63 counts relating to the shooting deaths of eleven worshippers at The Tree of Life Synagogue in Pittsburgh, Pennsylvania, and injuries to others, including law enforcement officers. The jury sentenced Mr. Bowers to death on all twenty-two capital-eligible counts. The district court denied Mr. Bowers's motion for a new trial on May 17, 2024.

On May 31, 2024, Mr. Bowers timely noticed this appeal, which will be only the second capital appeal to be heard in the Third Circuit in the history of the modern federal death penalty.  Effective on that date, appellate counsel Sean Bolser and Sarah Gannett were appointed by the district court to represent Mr. Bowers, and this Court confirmed their appointment a few days later. A third appellate lawyer, Margaret Farrand, was added by this Court the following month.[3] None of his three appellate lawyers represented Mr. Bowers in the district court.[4]  The

---

[3] All three appellate counsel are members of federal defender offices from outside the Circuit and are participating as part of a cost-savings initiative of the Defender Services Organization. Mr. Bolser is a member of the Federal Defender for the Northern District of New York, Ms. Gannett is a member of the Federal Defender for the District of Arizona, and Ms. Farrand is a member of the Central District of California.

[4] Such substitution of trial counsel is consistent with best practice. *See* Defender Services Office Training Division - Guide to Judiciary Policy, Vol. 7, Pt. A § 620.40(b) (recommending appointment of appellate counsel who did not represent the appellant at trial), *available at* https://ms.fd.org/sites/ms/files/cle-

government is represented by six attorneys in this Court, three of whom participated directly in the pretrial proceedings, trial, and sentencing in the district court.

Approximately two months after the appointment of appellate counsel, Mr. Bowers moved this Court to suspend imposition of any briefing schedule for 120 days to permit counsel to work on completing the record, to undertake a preliminary review of the record, and to propose a realistic briefing schedule. This Court granted the unopposed motion and directed counsel to file a status report every 30 days.

At the conclusion of that period, on December 6, 2024, counsel filed a motion requesting that the Court set a three-year briefing schedule from the May 2024 filing of the notice of appeal, with a deadline for filing the Brief for Appellant on May 31, 2027, and require interim status reports during the intervening period. (Doc. 33 at 1-2, 12.) The motion cited in support the similar timelines in other federal capital cases, including the two most analogous, *United States v. Tsarnaev* (No. 16-6001, First Circuit)—1063 days (three years and eleven months)—and *United States v. Roof* (No. 17-3, Fourth Circuit)—980 days (two years and eight months)—and the only other federal capital case to be heard in this Circuit, *United*

---

document/2023%20CJA%20Training%20Materials/CJA%20Guidelines.pdf (last visited August 12, 2025).

*States v. Savage* (No. 14-9003)—1491 days (four years and one month). It also

reviewed the standards of practice for federal capital appeals and the voluminous

and complex record. Appellee, the United States, opposed the proposed briefing

schedule, requesting instead that the deadline for filing be set for one year from the

Court's ruling—which would have made the brief due on December 18, 2025. The

government allowed, however, that "[i]f this Court sets a briefing schedule along

the lines proposed by the government, [defense] counsel may still request an

extension of that deadline based on a showing of good cause should they deem

such a request necessary. *See* Local Rule 31.4." (Doc. 34 at 7).

On December 18, 2024, the Court issued a briefing schedule setting the

current deadline for filing the Brief for Appellant, September 19, 2025. (Doc. 35).

That deadline is three months earlier than the date the government proposed.

**Though counsel have worked diligently and made substantial progress, additional time is required because of the unusual scope and rigor of the litigation below and due to counsel's ethical obligations in a capital appeal.**

Since the Court issued the briefing schedule, counsel have worked diligently

on Mr. Bowers's appeal and made substantial progress. Record collection and

review is essentially complete.[5] Few record materials are outstanding, although

counsel received some transcripts from the court reporter as recently as August 5,

---

[5] To avoid unnecessary work and/or inefficiencies, counsel have deferred some aspects of record collection and review. including reconstruction of proceedings and review of the physical evidence, until further progress is made on issue development.

2025. Assisted by the district court, trial counsel, and the government, counsel have obtained accurate copies of the trial exhibits.[6] We have also reviewed the entire district court docket (consisting of 1645 docket entries, including over 150 substantive motions), the full pretrial and trial transcript (comprising some 14,000 pages), and the exhibits (of which there are more than 1000, many of which are electronic or otherwise technical).

Counsel also have begun developing issues for possible presentation to this Court. This is time-intensive, because it is counsel's special obligation in a capital appeal to develop and present all "arguably meritorious issues"—not merely the issues counsel believe have the best chance of success. American Bar Ass'n, "Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases," 31 Hofstra L. Rev. 913, 1079 (Feb. 2003) (Guideline 10.5.1(C)). Doing so involves identifying possible issues, determining which have potential merit, and thoroughly researching those issues, even before embarking on brief writing. Prematurely "'[w]innowing' issues in a capital appeal can have fatal consequences [and] [i]ssues abandoned by counsel in one case … cannot necessarily be reclaimed later." *Id.* at 1083 (Commentary). Thus, "[w]hen a client will be killed if the case is lost, counsel should not let any possible ground for relief go unexplored or unexploited." *Id.*

---

[6] *See* Doc. 33 at 8-10 & n.11. The last of the exhibits were received on May 5, 2025.

To fulfill those obligations in this case, counsel must evaluate each of the more than 150 written motions in the docket—many of which are voluminous, complex, and include lengthy supporting exhibits—plus all the additional motions and objections contained in the 14,000 pages of pretrial and trial transcripts. Counsel must also carefully inspect the record for errors that trial counsel failed to note but which may be cognizable by this Court. *See* 31 Hofstra L. Rev. at 1079 (Feb. 2003) (Guideline 10.5.1(C)) ("[p]ost-conviction counsel should seek to litigate all [arguably meritorious] issues, whether or not previously presented."). Once the arguably meritorious issues for appeal are identified, counsel must thoroughly research and brief them.

To date, counsel have read the entire record, which yielded dozens of potential issues requiring evaluation for the appeal. We identified 20 that should be prioritized for likely inclusion in the brief and are in the process of thoroughly researching these issues including having prepared preliminary drafts of some of them. Once work on the initial 20 priority issues is complete, counsel must evaluate the remaining issues and draft any additional points that emerge. Only then may the final brief and appendix be assembled—itself a time-consuming and laborious effort, since federal capital appeals frequently contain more than a dozen issues and comprise hundreds of pages. *See, e.g., United States v. Tsarnaev*, No. 16-6001 (1st Cir.) (15 issues, 466 pages); *United States v. Roof*, No. 17-3 (4th Cir.)

(24 issues, 278 pages); *United States v. Savage*, No. 14-9003 (3d Cir.) (13 issues, 369 pages).[7]

At the time of filing, counsel are only 14 months into the Herculean task of preparing this appeal. By the time of the proposed, extended deadline, counsel will be just 21 months into our work—well within the national average for the twenty-five most recent federal capital appeals, which is about 33 months (983 days)[8]—and significantly under the time taken in comparable cases, discussed *infra* at 12-13 & n.13. As discussed below, appeals comparable to this one—with new counsel,

---

[7] *See also, e.g.*, *United States v. Sampson*, No. 04-6001 (1st Cir.) (20 issues, 296 pages); *United States v. Wilson*, No. 07-1320 (2d Cir.) (12 issues, 456 pages); *United States v. Coonce*, No. 14-2800 (8th Cir.) (16 issues, 263 pages); *United States v. Hall*, No. 14-2742 (8th Cir.) (14 issues, 237 pages); *United States v. Sanchez*, No. 09-12716P (11th Cir.) (13 issues, 253 pages); *United States v. Kadamovas & Mikhel* (Joint Brief), No. 07-99009 (9th Cir.) (7 issues, 151 pages); *United States v. Kadamovas*, No. 07-99008 (9th Cir.) (13 issues, 194 pages); *United States v. Mikhel*, No. 07-99009 (9th Cir.) (6 issues, 200 pages); *United States v. Troya*, No. 09-12716P (11th Cir.) (12 issues, 236 pages).

[8] *United States v. Council*, 20-1, 21-8  (4th Cir.) (opening brief filed 791 days after notice of appeal); *United States v. Cramer*, No. 18-40598 (5th Cir.) (665 days); *United States v. Fackrell*, No. 18-40598 (5th Cir.) (665 days); *United States v. Roof*, No. 17-3 (4th Cir.) (980 days); *United States v. Sampson*, 17-6001 (1st Cir.) (1233 days); *United States v. Tsarnaev*, No. 16-6001 (1st Cir.) (1063 days); *United States v. Sanders*, No. 15-31114 (5th Cir.) (1086 days); *United States v. Hall*, No. 14- 2472 (8th Cir.) (640 days); *United States v. Coonce*, No. 14-2800 (8th Cir.) (733 days); *United States v. Torrez*, No. 1401 (4th Cir.) (697 days*); United States v. Savage*, No. 149003 (3d Cir.) (1491 days); *United States v. Aquart*, No. 12-5086 (2d Cir.) (766 days); *United States v. Garcia*, No. 10-40525 (5th Cir.) (312 days); *United States v. Snarr*, No. 10-40525 (5th Cir.) (312 days); *United States v. Umana*, No. 10-6 (4th Cir.) (1122 days); *United States v. Runyon*, No. 09-11 (4th Cir.) (818 days); *United States v. Ebron*, No. 09- 40544 (5th Cir.) (537 days); *United States v. Sanchez*, No. 09-12716 (11th Cir.) (1045 days); *United States v. Troya*, No. 09-12716 (11th Cir.) (1049 days); *United States v. Taylor*, No. 09-5517 (6th Cir.) (1650 days); *United States v. Kadamovas*, No. 07-99009 (9th Cir.) (2294 days); *United States v. Mikhel*, No. 07-099008 (9th Cir.) (2298 days); *United States v. Hager*, No. 8-4 (4th Cir.) (1550 days); *United States v. Jackson*, No. 06-41680 (5th Cir.) (434 days); *United States v. Montgomery*, No. 08-1780 (8th Cir.) (335 days).

extensive records, and in circuits with little capital precedent—frequently take

longer.[9]

### The requested extension is warranted for good cause, given the nature of the case.

Local Appellate Rule 31.4 requires that counsel show "good cause" to

extend the briefing schedule. No reported decision defines "good cause" for

purposes of this rule,[10] but, in a case of national significance with complex, rarely

litigated issues, an extension requested so counsel can provide effective

representation may be expected to satisfy the showing required. This is especially

so when the stakes are high—as in a capital case—and when the requested

extension maintains the briefing schedule well below the average time for a federal

death penalty appeal.

The proposed extension also adds just a few months to the government's

initial proposed deadline of December 18, 2025 (one year from the Court's

scheduling order). Understanding the rigor of the district court litigation, the

---

[9] Some of the recent cases include matters that involved comparatively simple offenses, short trials, and straightforward appeals. *See, e.g., Council* (2 murders during bank robbery, 26-day trial, 10-issue appeal); *Cramer* (1 prison homicide, 35-day trial, 10-issue appeal); *Montgomery* (1 murder, 17-day trial, 10-issue appeal).

[10] Black's Law Dictionary defines "good cause" as "[a] legally sufficient reason." "Good cause is often the burden placed on a litigant (usu. by court rule or order) to show why a request should be granted or an action excluded." Good Cause, Black's Law Dictionary (12th ed. 2024). The rule itself notes only that "[g]eneralities, such as that the purpose of the motion is not for delay or that counsel is too busy, are not sufficient."

seriousness of the offense, and its high-profile nature, even the government conceded that Mr. Bowers might be warranted in requesting an extension of its proposed deadline based on a showing of good cause. *See* Doc. 34 at 7.[11] Indeed, just anticipating the difficulty of having to respond to an appeal in a case of this magnitude, the government has noticed the appearance of six attorneys in this matter (including three of the original trial lawyers), compared to the three attorneys this Court appointed to prepare the Brief for Appellant—none of whom was involved in or familiar with the district court proceedings prior to our appointment. The government also requested six months in which to file its opposing brief (twice as long as the 90 days the Court has granted). Based on prior appeals, preparation of the government's brief is likely to take at least that long.[12]

Having now reviewed the record, counsel can confirm this will be an exceptionally complex appeal. The proceedings here were unusually lengthy and involved—even for a federal capital case—spanning almost five years and raising sophisticated and often novel questions about virtually all aspects of the case, including the indictment, the Federal Death Penalty Act, jury selection, evidentiary issues, mental health examinations and testimony, and capital sentencing. That is

---

[11] The government did not commit regarding whether it would consent to such requests. *Id.*

[12] *See, e.g., Roof*, No. 17-3 (4th Cir.) (government briefing took almost ten months); *Tsarnaev*, No. 16-6001 (1st Cir.) (government briefing took six months); *Savage*, 14-9003 (3d Cir.) (government briefing took seven months).

likely because this is only the second federal capital prosecution this Court will directly review—and one of just a few similar cases nationally—so the challenges raised below were often issues of first impression. These are particularly time-consuming to brief, as they demand that counsel address not just applicable Circuit precedent, but also a range of decisional law in other jurisdictions, as well as legislative history, policy considerations, and secondary sources. The case was also "trifurcated"—into the guilt/innocence, eligibility, and penalty selection phases—adding a whole phase of the trial (the eligibility phase) never before litigated in a federal capital trial in the Third Circuit.

One example that captures many of the reasons this appeal is so challenging is the litigation related to Federal Rule of Criminal Procedure 12.2, which governs mental health evidence in capital cases. Based on counsel's review so far, Rule 12.2 issues appear to have been intensely contested during the pretrial period and the trial and to be an important issue for appeal. Dozens of pleadings were filed on the topic, which was addressed in numerous pretrial conferences. Although the district court attempted to resolve some issues before trial, new objections emerged mid-trial involving critical government and defense witnesses and the parties' arguments to the jury. Counsel's preliminary research suggests that this Court has not yet addressed Rule 12.2 in any federal capital case. Preparing just this point—

which is just one of several intensely litigated, novel questions in the case—is therefore a heavy lift.

In other federal capital cases in which similarly intensive and novel pretrial and trial litigation occurred, preparation of the appeal took 50% more time than the national average of 983 days (about 33 months)—about 1523 days (approximately 50 months).[13] In the two cases the government cited as most analogous to Mr. Bowers's— *United States v. Tsarnaev* (No. 16-6001, First Circuit), and *United States v. Roof* (No. 17-3, Fourth Circuit)—the appellate courts allotted close to the national average of three years (1063 days) and over two and one-half years (980 days), respectively. Mr. Roof's appellate counsel were afforded this lengthy period even though Mr. Roof proceeded *pro se* for significant portions of his trial and waived presentation of a defense penalty phase entirely, limiting both the length of the record and the number of issues preserved. *United States v. Savage*, No. 14-9003, the only other federal death penalty appeal reviewed by this Court in the modern death penalty era, actually took more than four years from filing the notice of appeal to filing of the appellant's opening brief.

---

[13] Cases involving similarly novel and intensive pretrial and trial litigation include, *e.g.*, *United States v. Tsarnaev*, No. 16-6001 (1st Cir.) (opening brief filed 1063 days after notice of appeal); *United States v. Sampson*, No. 17-6001 (1st Cir.) (1233 days); *United States v. Hager*, No. 08-04 (4th Cir.) (1550 days); *United States v. Kadamovas*, No. 07-99009 (9th Cir.) (2294 days); *United States v. Taylor*, No. 09-5517 (6th Cir.) (1650 days); *United States v. Mikhel*, No. 07-099008 (9th Cir.) (2298 days); *United States v. Troya*, No. 09-12716P (11th Cir.) (1049 days); and *United States v. Sanchez*, No. 09-12716P (11th Cir.) (1045 days).

Many of the issues in *Savage* appear to have been different—*Savage* was a twelve-victim, racketeering (VICAR) murder case—but it also involved a complex and lengthy district court proceeding.[14] The 365-page appeal ultimately raised thirteen claims.[15] This Court approved just over four years (1491 days) from the filing of the notice of appeal for appellate counsel to compile the record and prepare those claims. This is in line with the time allowed by other courts without a high volume of Federal Death Penalty Act cases (and therefore where the appeals raised multiple issues of first impression)—including the First and Ninth Circuits.[16]

Given the work ahead, the six-month requested extension is warranted for good cause.

**Appointed counsel are proceeding with diligence, will continue to prioritize Mr. Bowers's appeal, and will keep the Court apprised of our progress.**

Undersigned counsel have made significant progress in the nine months since the Court issued its scheduling order. Although each of us has important

---

[14] In *Savage*, there were more than 1600 docket entries, 100 court days, and over 1000 exhibits, compared to the 1640 docket entries, 63 court days, and 1036 exhibits in this case. There were, however, only twelve death-eligible counts, as opposed to the twenty-two here. And although the *Savage* docket was lengthy, fewer than 100 substantive motions were filed—as opposed to over 150 here.

[15] The government's brief in response was 396 pages, and the Court's opinion was 201 pages.

[16] *See, e.g.*, *United States v. Tsarnaev*, No. 16-6001 (1st Cir.) (1063 days); *United States v. Sampson*, No. 17-6001 (1st Cir.) (1233 days); *United States v. Kadamovas*, No. 07-99009 (9th Cir.) (2294 days); *United States v. Mikhel*, No. 07-099008 (9th Cir.) (2298 days).

other responsibilities in our busy federal defender offices,[17] we have collected and reviewed the extensive record and begun developing and drafting issues for the appeal.[18] However, given the special ethical responsibilities in this federal death-penalty appeal and the extraordinary number, complexity and novelty of the appellate issues, the requested time is reasonable and necessary both to provide effective representation on appeal and to promote the Court's interest in receiving thorough, informative, and well-reasoned briefing in this important case.

Counsel have been forthcoming with the Court about the extraordinary challenges of briefing a federal death penalty appeal and the ways in which this case presents even greater challenges than most. We have reduced our caseloads accordingly, and we continue to work with all deliberate speed to fulfill our obligations as appellate counsel in this important matter.

WHEREFORE, Mr. Bowers respectfully requests that the Court extend the deadline for filing his opening brief to March 19, 2026.

---

[17] Mr. Bolser and Ms. Gannett are counsel of record in other federal capital and non-capital cases, and Ms. Farrand is the Chief of her office's Appellate Unit and is counsel of record in other federal non-capital cases.

[18] We have done so despite challenges that have threatened to interfere with our work, including the Los Angeles fires, which affected operations at Ms. Farrand's office, the ransomware attack on Ms. Gannett's office, and health matters affecting Ms. Gannett's and Mr. Bolser's families.

Respectfully submitted,

ROBERT BOWERS

by his attorneys:

*s/ Sean J. Bolser, Esq.*
Federal Capital Appellate Resource Counsel
Project
Federal Defenders of New York
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201
718-330-1200
sean_bolser@fd.org

*s/ Sarah S. Gannett, Esq.*
Office of the Federal Public Defender
District of Arizona
250 N. 7th Avenue, Suite 600
Phoenix, AZ 85007
602-382-2700
sarah_gannet@fd.org

*s/ Margaret Farrand, Esq.*
Office of Federal Public Defender
Central District of California
321 E 2nd Street
Los Angeles, CA 90012
213-894-7528
margaret_farrand@fd.org